**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-60298-CR-SCOLA**

UNITED STATES OF AMERICA,
      Plaintiff,

vs.

SHEHERYAR ALAM QAZI,
      Defendant.

_____/

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO AMENDED MOTION
TO COMPEL NOTICE OF INTENT TO USE FOREIGN INTELLIGENCE
SURVEILLANCE ACT INFORMATION (DE 75)**

Mr. Qazi, through undersigned counsel, files this reply to the government's DE 75, and in support of his amended motion to compel notice (DE 67), states the following:

1.  Mr. Qazi is charged by indictment with one count of conspiracy to provide material support to terrorists and one count of conspiring to use a weapon of mass destruction.

2.  Mr. Qazi previously filed DE 67 which sought notice from the government as to whether it intends to use evidence obtained under or derived from surveillance authorized by the FISA Amendments Act of 2008 (hereinafter "FAA").  Surveillance under the FAA differs considerably from surveillance under traditional FISA, as described below, and raises significantly different constitutional questions. Without notice, Mr. Qazi cannot fairly and effectively challenge the evidence that the government intends to use against him.

3.  The government responded in DE 75 by stating that its previously filed notices of intent to use information acquired under the Foreign Intelligence Surveillance Act (hereinafter "FISA") provided the notice required by law.  *See* DE 9, 10.

4.   The government's submissions and filings, however, avoid answering the question raised by Mr. Qazi in his motion because they do not address the FAA and therefore do *not* provide the notice required by 50 U.S.C. §§ 1881e(a), 1806(c).

5.   In short, Mr. Qazi simply seeks a "yes" or "no" response to the question of whether the government intends to use information that was obtained or derived from surveillance authorized by the FAA.  The government still has not answered that question, despite Senator Feinstein's congressional testimony naming Mr. Qazi as a likely target of FAA surveillance.[1]  By statute, and as a matter of due process, Mr. Qazi is entitled to notice of the government's intent to use such evidence against him in these proceedings.  *See* 50 U.S.C. §§ 1881e(a), 1806(c).

6.   Accordingly, Mr. Qazi requests that this Court order the government to provide him with notice as to:

> a.  Whether the electronic surveillance described in the government's FISA Notices (DE 9, 10) was conducted pursuant to the pre-2008 provisions of FISA or, instead, the FAA; and
>
> b.  Whether the affidavit and other evidence offered in support of any FISA order relied on information obtained under or derived from an FAA surveillance order.

7.   Notice of the legal authority for the government's surveillance is required by statute and the U.S. Constitution, implicates no classified information, and is of enormous consequence for Mr. Qazi who intends to challenge the admissibility of any evidence obtained directly under the FAA or as the fruit of FAA surveillance. The Court should compel the government to provide basic notice of the legal authority on which it relied in acquiring the evidence it intends to use against Mr. Qazi.

---

[1] *See* Testimony of Senator Diane Feinstein in support of the FISA Amendments Reauthorization Act of 2012, 145 Cong. Rec. S8393 (daily ed. Dec. 27, 2012), reprinted in DE 67 at pages 3-4.

8. Mr. Qazi files this reply in support of his motion to compel notice. He incorporates by reference the arguments previously made in DE 67, and in addition states:

## BACKGROUND REGARDING FISA

Surveillance conducted pursuant to the FAA differs considerably from the surveillance permitted under traditional FISA. Congress originally enacted the Foreign Intelligence Surveillance Act ("FISA") in 1978 to regulate government surveillance conducted for foreign intelligence purposes. The statute created the Foreign Intelligence Surveillance Court (hereinafter "FISC") and empowered it to grant or deny government applications for surveillance orders in foreign intelligence investigations. *See* 50 U.S.C. § 1803(a).

In its current form, FISA regulates, among other things, "electronic surveillance," which is defined to include:

> the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire communication to or from a person in the United States, without the consent of any party thereto, if such acquisition occurs in the United States.

50 U.S.C. § 1801(f)(2).

Before passage of the FAA in 2008, FISA generally foreclosed the government from engaging in "electronic surveillance" without first obtaining an individualized and particularized order from the FISC. To obtain an order, the government was required to submit an application that identified or described the target of the surveillance; explained the government's basis for believing that "the target of the electronic surveillance [was] a foreign power or an agent of a foreign power"; explained the government's basis for believing that "each of the facilities or places at which the electronic surveillance [was] directed [was] being used, or [was] about to be

3

used, by a foreign power or an agent of a foreign powerö; described the procedures the government would use to õminimiz[e]ö the acquisition, retention, and dissemination of non-publicly available information concerning U.S. persons; described the nature of the foreign intelligence information sought and the type of communications that would be subject to surveillance; and certified that a õsignificant purposeö of the surveillance was to obtain õforeign intelligence information.ö *Id.* § 1804(a) (2006).[2]

The FISC could issue such an order only if it found, among other things, that there was õprobable cause to believe that the target of the electronic surveillance [was] a foreign power or an agent of a foreign power,ö *id.* § 1805(a)(2)(A), and that õeach of the facilities or places at which the electronic surveillance [was] directed[, was] being used, or [was] about to be used, by a foreign power or an agent of a foreign power,ö *id.* § 1805(a)(2)(B).

## THE FISA AMENDMENTS ACT OF 2008

The FISA Amendments Act (õFAAö) was signed into law on July 10, 2008, and provided legislative sanction for the warrantless surveillance of U.S. citizensø and residentsø communications.

While leaving FISA in place insofar as communications known to be purely domestic are concerned, the FAA revolutionized the FISA regime by allowing the mass acquisition of U.S. citizensø and residentsø international communications without individualized judicial oversight or supervision. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143-44 (2013).  Under the FAA, the Attorney General and Director of National Intelligence (hereinafter õDNIö) can

---

[2] õForeign intelligence informationö was defined to include, among other things, information concerning terrorism, national security, and foreign affairs.

"authorize jointly, for a period of up to one year . . . the targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information." 50 U.S.C. § 1881a(a). While the FAA prohibits the government from "intentionally target[ing] any person known at the time of the acquisition to be located in the United States," *id.* § 1881a(b)(1), an acquisition authorized under the FAA may nonetheless sweep up the international communications of U.S. citizens and residents. Indeed, the Attorney General and the DNI may authorize a mass acquisition under § 1881a— an acquisition encompassing thousands or even millions of communications— even if they know in advance that all of the communications to be acquired under the program will originate or terminate inside the United States.

Before authorizing surveillance under § 1881a— or, in some circumstances, within seven days of authorizing such surveillance— the Attorney General and the DNI must submit to the FISC an application for an order (hereinafter, a "mass acquisition order"). *Id.* § 1881a(a), (c)(2). To obtain a mass acquisition order, the Attorney General and DNI must provide to the FISC "a written certification and supporting affidavit" attesting that the FISC has approved, or that the government has submitted to the FISC for approval, procedures ("targeting procedures") reasonably designed to (1) ensure that the acquisition is "limited to targeting persons reasonably believed to be located outside the United States," and (2) "prevent the intentional acquisition of any communication as to which the sender and all intended recipients are known at the time of the acquisition to be located in the United States." *Id.* § 1881a(g)(2)(A)(i). The certification and supporting affidavit must also attest that the FISC has approved, or that the government has submitted to the FISC for approval, procedures ("minimization procedures") that meet the definition of "minimization procedures" under 50 U.S.C. §§ 1801(h) or 1821(4). The certification and supporting affidavit must also attest, among other things, that the Attorney

General has adopted "guidelines" to ensure compliance with the limitations set out in § 1881a(b); that the targeting procedures, minimization procedures, and guidelines are consistent with the Fourth Amendment; and that "a significant purpose of the acquisition is to obtain foreign intelligence information." *Id.* § 1881a(g)(2)(A)(iii)–(vii).

A mass surveillance order is a kind of blank check that, once obtained, covers— without further judicial authorization— whatever surveillance the government may choose to engage in, within broadly drawn parameters, for a period of up to one year. Accordingly, the Act does not require the government to demonstrate to the FISC that its surveillance targets are foreign agents, engaged in criminal activity, or connected even remotely with terrorism. Indeed, the statute does not require the government to identify its surveillance targets at all. Moreover, the statute expressly provides that the government's certification is not required to identify the facilities, telephone lines, e-mail addresses, places, premises, or property at which its surveillance will be directed. *Id.* § 1881a(g)(4). Thus, the government may obtain a mass acquisition order without identifying the people (or even the group of people) to be surveilled; without specifying the facilities, places, premises, or property to be monitored; without specifying the particular communications to be collected; without obtaining individualized warrants based on criminal or foreign intelligence probable cause; and without making even a prior administrative determination that the acquisition relates to a particular foreign agent or foreign power. A single mass acquisition order may be used to justify the surveillance of communications implicating thousands or even millions of U.S. citizens and residents. To effect such surveillance under the FAA, the government would have to "target" people overseas, but that targeting of people overseas could involve the collection of countless Americans' private communications.

The role of the FISC in authorizing and supervising surveillance conducted under the FAA is "narrowly circumscribed." *In re Proceedings Required by § 702(i) of the FISA Amendments Act of 2008*, No. Misc. 08-01, slip op. at 3 (FISA Ct. Aug. 27, 2008) (internal quotation marks omitted). Unlike the judiciary's traditional Fourth Amendment role— as a gatekeeper for particular acts of surveillance— the FISC's role under the FAA is simply to bless in advance the vaguest parameters under which the government is then free to conduct surveillance for up to one year. The FISC does not consider individualized and particularized surveillance applications, does not make individualized probable cause determinations, and does not supervise the implementation of the government's targeting or minimization procedures.

On February 26, 2013, the Supreme Court addressed a challenge to the FAA's constitutionality, turning aside a civil lawsuit brought on behalf of lawyers, journalists, human rights researchers on standing grounds. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). In so doing, the Court stated that an appropriate and available avenue for judicial review of the FAA would be a proceeding in which the government sought to use communications intercepted under the FAA's legal authority, or evidence derived therefrom. *Id*. at 1154. Mr. Qazi is now seeking to determine whether the instant prosecution is one such case.

## **ARGUMENT**

## **I. Mr. Qazi is entitled to notice of whether the government intends to rely upon FAA-obtained information**

In the instant criminal proceedings, the government has broadly stated its intent to rely on information obtained or derived from electronic surveillance "conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended." DE 9, 10. Mr. Qazi intends to

challenge the constitutionality of that surveillance and the admissibility of the resulting evidence on a number of grounds. To do so effectively, however, he must know the legal authority relied upon by the government to conduct its surveillance:  a traditional FISA order or an order under the FAA authorizing the *warrantless* interception of his electronic communications.

Unfortunately, the government's FISA Notice leaves this question very much in doubt. It appears that the government is interpreting the FAA's notice requirement in such a way that allows it to avoid providing Mr. Qazi with any true notice at all—by concealing its FAA surveillance behind a traditional FISA notice. The unusual structure of the FAA suggests that the government may be doing just this.[3] Construing the FAA's notice provision requires reading two statutory sections together: first, the FAA states that "[i]nformation acquired from an acquisition conducted under [the FAA] shall be deemed to be information acquired from an electronic surveillance pursuant to subchapter I for purposes of section 1806 of this title." *Id.* § 1881e(a). Significantly, subchapter I is the traditional FISA statute, and section 1806 contains FISA's notice provision. *See id.* § 1806(c). FISA's notice provision requires, in turn, that

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other

---

[3] This conclusion is further supported by the fact that, to counsel's knowledge, the government has *never* disclosed its reliance on material obtained through FAA surveillance in the five years since the statute was adopted. The lack of disclosure is all the more striking because reports indicate that the NSA has intercepted communications on a massive scale—pursuant to the FAA as well as other programs—during this same period. *See* Priest & Arkin, *A Hidden World, Growing Beyond Control*, Washington Post, July 19, 2010, p. A1 (reporting that every day, collection systems at the National Security Agency intercept and store 1.7 billion e-mails, telephone calls, and other types of communications).

> authority in which the information is to be disclosed or used that the Government
> intends to so disclose or so use such information.

*Id.* § 1806(c) (emphasis added).  It appears that the government may be reading these provisions as a license to "rebrand" or "relabel" its FAA surveillance as traditional FISA surveillance for the purposes of notice. Such a view is deeply troubling, because it would prevent a defendant like Mr. Qazi from ever learning, or challenging, the underlying legal basis for the government's interception of his communications.

Both the statute and the U.S. Constitution mandate a different reading of the FAA. In particular, sections 1881e(a) and 1806(c) can and should be read together to require that the government notify "an aggrieved person" like Mr. Qazi that the government intends to use "any information obtained or derived from an electronic surveillance" conducted pursuant to the FAA. Because material acquired under the FAA is "deemed to be information acquired from an electronic surveillance pursuant to subchapter I for purposes of section 1806," *id.* § 1881e(a), the government must give notice on the terms set out in section 1806(c)— *just as* information obtained or derived from traditional FISA surveillance must be disclosed. In short, section 1881e(a) subjects FAA surveillance to a parallel set of notice and suppression procedures. *See id.* § 1881e(a); *id.* § 1806. This is a commonsense interpretation of section 1881e(a), and it has been endorsed by the Supreme Court in its recent *Amnesty* decision: "if the Government intends to use or disclose information obtained or derived from a §1881a acquisition in judicial or administrative proceedings, it *must* provide advance notice of its intent, and the affected person may challenge the lawfulness of the acquisition." *Amnesty Int'l*, 133 S. Ct. at 1154 (citing 50 U.S.C. §§ 1806(c),1806(e), 1881e(a) (emphasis added).  This reading is consistent with an effort

to subject the FAA to the various protections and limitations that have long been written into traditional FISA.

In this way, the statute does not permit the government to cloak or mask its reliance on FAA-obtained or FAA-derived evidence by treating it as though the material were obtained under or derived from a traditional FISA order. Nevertheless, it appears that that is precisely what the government has done in the instant case. Such a reading is inconsistent with the language of the statute, as set out above, and with the overall statutory scheme established by Congress. Indeed, the notice requirement in §1806(c) has a specific procedural purpose: it is closely tied to the suppression provisions that immediately follow in §§1806(e) and 1806(g). There, Congress provided that aggrieved persons must have an adequate opportunity to challenge and suppress evidence obtained or derived from electronic surveillance. As the statutory scheme makes plain, these suppression provisions depend on notice— they have no force unless a defendant is first given notice of the basis for the government's search. *Cf. United States v. Eastman*, 465 F.2d 1057, 1062–63 & n.13 (3d Cir. 1972) (concluding that Title III's statutory notice provision was "intended to provide the defendant whose telephone has been subject to wiretap an opportunity to test the validity of the wiretapping authorization").

Moreover, if the statute were read to permit the government to cloak its reliance on FAA evidence in a traditional FISA notice, that interpretation would violate the Fourth and Fifth Amendments— because it would deprive criminal defendants and other aggrieved persons an adequate opportunity to challenge the basis for the search, and to suppress the resulting evidence. The Fourth Amendment requires notice of a search, even if that notice is given after the fact. *See Berger v. New York*, 388 U.S. 41, 60 (1967) (invalidating electronic eavesdropping statute for, among other things, lack of notice requirement); *United States v. Freitas*, 800 F.2d 1451, 1456

(9th Cir. 1986) (finding warrant constitutionally defective for its failure to provide explicitly for notice within a reasonable time). A principal rationale for this notice requirement is that it permits the target of a search to challenge the government's authority and seek redress. *See, e.g.*, S. Rep. No. 1097, at 2194 (1968) (explaining the inclusion of a notice requirement in Title III's wiretapping provisions and citing *Berger*, 388 U.S. 41); *cf. Alderman v. United States*, 394 U.S. 165, 171-672 (1969) (holding that the victim of an unlawful search has the right to suppression). Accordingly, the notice required by the Fourth Amendment does not encompass only the *fact* of the search; rather, it must include information sufficient to identify the government's legal basis for its search.

In much the same way, due process requires the government to disclose its reliance on FAA evidence, as distinguished from traditional FISA evidence.  Due process mandates the disclosure of information in the government's possession if nondisclosure would "affect the outcome of [a] suppression hearing." *Smith v. Black*, 904 F.2d 950, 965 (5th Cir. 1990); *see also United States v. Gamez-Orduño*, 235 F.3d 453, 461 (9th Cir. 2000). Here, Mr. Qazi has a strong claim that suppression of FAA-derived evidence is constitutionally required. *See, e.g., Michigan v. DeFillippo*, 443 U.S. 31, 39 (1979) (recognizing that statutes which, "by their own terms, authorize[] searches under circumstances which d[o] not satisfy the traditional warrant and probable-cause requirements of the Fourth Amendment," are on their face more constitutionally suspect). Yet, to raise such a claim effectively, Mr. Qazi must know if the government intends to rely on evidence that is the product of warrantless FAA surveillance. The government, having brought Mr. Qazi before this Court on criminal charges, should not be permitted to keep the legal basis for its evidence secret. *See Al Haramain Islamic Found., Inc. v. U.S. Dept. of Treasury*, 686 F.3d 965, 986-87 (9th Cir. 2012) ("[T]he opportunity to guess at the factual and legal bases for a

government action does not substitute for actual notice of the government's intentions."); *Gete v. INS*, 121 F.3d 1285, 1287-91 (9th Cir. 1997); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 901-08 (N.D. Ohio 2009). For these reasons, any reading of the FAA's notice provision that permits the government to hide its reliance on warrantless FAA surveillance, and thereby evade legal challenge, would violate due process. Under well-established rules of statutory construction, such an interpretation must be avoided. *See, e.g., Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail . . . .").

The government has not told Mr. Qazi whether his electronic communications were captured pursuant to a traditional FISA order, or instead as part of a warrantless acquisition under the FAA. As described above, surveillance under traditional FISA differs dramatically from surveillance under the FAA, and the constitutional questions associated with each are likewise profoundly distinct. This distinction has great significance for a criminal defendant like Mr. Qazi, and he is entitled to the notice contemplated here.

Importantly, without notice, the FAA will be effectively immune from judicial review—a result that runs contrary to the Supreme Court's recent holding in *Amnesty*. In that case, the Supreme Court turned aside a civil challenge to the FAA brought on behalf of journalists, lawyers, and human rights advocates. But, in doing so, both the Court and the government indicated that the proper avenue for judicial review of the government's warrantless wiretapping

program is a criminal or administrative proceeding where FAA material is at issue.[4] *Amnesty Int'l*, 133 S. Ct. at 1154.

The Supreme Court's holding in *Amnesty* plainly contemplates effective notice to a defendant. On the other hand, if the government is permitted to cloak its reliance on FAA-derived material behind a traditional FISA notice, judicial review will be, in reality, impossible for a defendant to obtain. In those circumstances, because FAA wiretapping is conducted in secret, *no one* would have standing to challenge the government's mass acquisition of electronic communications pursuant to the FAA. In short, without notice in cases like the present one, the very real possibility exists that the FAA will never be subjected to meaningful constitutional review, even by criminal defendants such as Mr. Qazi.

If the government intends to use evidence obtained through its warrantless interception of Mr. Qazi's electronic communications, it should be required to tell him so. The answer to this question, *i.e.,* the government's *legal* authority for its interception of Mr. Qazi's communications—involves no classified information but is essential to his ability to challenge the constitutionality of FAA surveillance and the admissibility of its fruit. The government can resolve this aspect of the instant motion by simply and clearly stating whether it intends to rely upon evidence obtained pursuant to the FAA.

---

[4] In its brief in *Amnesty*, the government acknowledged that "If [it] intends to use or disclose any information obtained or derived from its acquisition of a person's communications under Section 1881a in judicial or administrative proceedings against that person, it must provide advance notice of its intent to the tribunal and the person, whether or not the person was targeted for surveillance under Section 1881a. 50 U.S.C. 1881e(a); *see* 50 U.S.C. 1801(k), 1806(c). That person may then challenge the use of that information in district court by challenging the lawfulness of the Section 1881a acquisition. 50 U.S.C. 1806(e) and (f), 1881e(a)." Br. for Petitioner at 8, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013).

## II.  Even if the government does not intend to rely directly upon evidence acquired pursuant to the FAA, it still must provide notice of whether it intends to rely upon FAA-*derived* evidence.

Even if the government intends to rely solely upon information obtained pursuant to a traditional FISA order, Mr. Qazi still seeks notice as to whether the government's application for that order relied upon evidence obtained under or derived from the FAA.  In other words, Mr. Qazi is seeking notice as to whether the government intends to rely upon the fruit of any FAA surveillance. FISA's notice provision requires the government to give notice of its intent to rely upon information *obtained* under either FISA or the FAA as well as information *derived* from surveillance under FISA or the FAA. *See* 50 U.S.C. § 1806(c) which requires notice of "any information *obtained or derived* from an electronic surveillance" (emphasis added)).  Mr. Qazi is therefore seeking only the notice that the statute requires.

On this point too, Mr. Qazi seeks a simple "yes" or "no" response to the question of whether the government's information was derived from– *i.e.*, the fruit of– FAA surveillance. This result is consistent with § 1806 which aims to protect classified facts from unwarranted disclosure--not to obfuscate the legal authority relied upon by the government and to thereby prevent evidentiary challenges. This Court should therefore compel the government to clarify the legal authority for its surveillance.

Absent clarification by the government as to whether its FISA-obtained evidence was the fruit of FAA surveillance, Mr. Qazi will be unable to adequately challenge evidence that may have been the product of an unconstitutional search.  In a typical FISA case, courts undertake *ex parte*, *in camera* review of the facts supporting the FISA application as well as the government's

compliance with the surveillance order's minimization requirements.[5] But those courts do not consider *sua sponte* the constitutionality of the underlying surveillance statute. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) (warning against unnecessary constitutional adjudication). Instead, it falls to criminal defendants such as Mr. Qazi to lodge constitutional challenges to evidence the government plans to use against them. If the Court does not grant the relief requested here, Mr. Qazi will never know whether the government relied upon the FAA in applying for its FISA order. As a result, he will be unable to effectively challenge—and the Court will be unable to assess—the constitutionality of the FAA and the admissibility of the fruit of FAA surveillance in this case. For the same reasons stated above, due process entitles him to know whether the government's FISA evidence is the fruit of warrantless FAA surveillance.

By refusing to provide the type of notice being sought by Mr. Qazi in this motion, the government is tacitly maintaining that the FAA and the government's reliance upon the fruit of FAA surveillance are effectively unreviewable by any court. But that result is untenable, particularly in light of the Supreme Court's recent decision in *Amnesty International*. In fact, the concerns noted above relating to that decision are even more pronounced when it comes to the *fruit* of FAA surveillance. That is because there are structural reasons to believe that the government may never actually introduce direct FAA evidence in a criminal prosecution; it may instead use its FAA evidence to seek a traditional FISA order on which it then builds its case. Indeed, once the government initiates an investigation for the purposes of domestic prosecution,

---

[5] *See, e.g.*, *Belfield*, 692 F.2d at 147 (*In camera* review determined that "[t]he target of the surveillance is clearly identified; the foreign policy purpose patently evident; the facts justifying the surveillance amply supported and certified to by responsible officials; and the results of the surveillance are well within the bounds set by the minimization procedures. It is readily apparent that all the *statutory requirements* have been met." (emphasis added)); 50 U.S.C. § 1806(f) (directing courts to determine if the search was "lawfully authorized and conducted").

it has every incentive to convert any FAA surveillance order into a FISA order. Unlike the FAA, a traditional FISA order permits the government to target individuals within the United States, thereby capturing a wider swathe of the target's communications. In that situation, the government's FISA order may very well be the fruit of the earlier FAA surveillance. Nevertheless, the government appears to believe that it is not required to disclose this fact. However, unless it is required to give notice of all evidence "obtained *or derived*" from FAA surveillance, the government will be able to conceal FAA surveillance through routine investigative practices, thereby rendering the FAA's notice provision entirely ineffectual. 50 U.S.C. § 1806(c) (emphasis added); 50 U.S.C. § 1881e(a).

## CONCLUSION

Based upon the above-stated arguments as well as those arguments contained in DE 67, Mr. Qazi respectfully requests that this Court order the government to:

1. State whether the electronic surveillance described in its FISA Notices (DE 9, 10) was conducted pursuant to the pre-2008 provisions of FISA or, instead, the FAA; and

2. Whether the affidavit and other evidence offered in support of any FISA order relied on information obtained under or derived from an FAA surveillance order.

Respectfully submitted,


/s/ Ronald S. Chapman
Ronald S. Chapman (Bar No. 898139)
400 Clematis Street, Suite 206
West Palm Beach, FL 33401
Tel (561) 832-4348
Fax (561) 832-4346
Email:  ronchapman@bellsouth.net
Attorney for defendant Sheheryar Qazi


**Certificate of Service**

Undersigned counsel certifies that on May 2, 2013 this motion was electronically filed with the Clerk of Court using CM/ECF, and it was electronically transmitted to all counsel of record.


/s/ Ronald S. Chapman
Ronald S. Chapman