**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-60298-CR-SCOLA**

UNITED STATES OF AMERICA,
　　　　Plaintiff,

v.

SHEHERYAR ALAM QAZI,
　　　　Defendant.
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿/

**DEFENDANT'S REPLY TO THE GOVERNMENT'S MOTION FOR**
**RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANT'S**
**AMENDED MOTION TO COMPEL NOTICE OF ITS INTENT TO USE**
**INFORMATION DERIVED PURSUANT TO THE FISA AMENDMENTS**
**ACT (FAA) (DE 80)**

　　　　Mr. Qazi, through undersigned counsel, files this reply to the government's DE 80 in which the government asks the Court to reverse its Order (DE 77) that granted defendant's amended motion to compel notice of intent to use information obtained or derived pursuant to the FISA Amendments Act ("FAA"), 50 U.S.C. § 1881a.

　　　　The government has no basis for seeking reconsideration of the Court's order. Mr. Qazi's motion and the Court's Order are consistent with the FAA's requirement that the government provide notice of its intent to use evidence obtained *or derived* from FAA surveillance, as recently affirmed by the Supreme Court in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1154 (2013). *See* 50 U.S.C. §§ 1881e(a), 1806(c). Mr. Qazi has sought this notice from the outset. *See* DE 67 at 1, 2, 4, 5 (seeking notice of the government's "intent to use or disclose information obtained *or derived* from any § 1881a acquisition"). The government concedes its duty to give Mr. Qazi notice, *see* DE 80 at 3, yet it continues to resist giving notice of FAA-*derived*

1

information— in particular, whether FAA surveillance provided support for a traditional FISA application. But that refusal runs contrary to the plain language of the *Amnesty* decision and the FAA's notice provision, which require notice in precisely these circumstances.

The government's motion for reconsideration confuses the issue; Mr. Qazi's motion for notice does not ask the government to turn over any classified material, nor does it trigger the procedures set forth in 50 U.S.C. § 1806(f). The motion simply seeks a "yes" or "no" answer as to whether the government intends to rely on evidence obtained— or derived— from surveillance conducted pursuant to the FAA. That is a question that concerns only the government's *legal authority* for its surveillance and interception of electronic communications, and it is precisely the type of limited disclosure contemplated by 50 U.S.C. § 1806(c) and required by the Fourth and Fifth Amendments. If the government relied on FAA surveillance in obtaining a traditional FISA order, and thereby gathered evidence it intends to use in this case, then that evidence is "derived" from the FAA. In those circumstances, Mr. Qazi is entitled to notice because the government's evidence is the fruit of FAA surveillance. That is all the Court's Order requires when it directs the government to state "whether the affidavit and other evidence offered in support of any FISA order relied on information obtained under or derived from an FAA surveillance order." DE 77 at 1.  The government can answer the question in one word, and that is the bare minimum required by both 50 U.S.C. § 1806(c) and the Supreme Court's *Amnesty* decision.

<u>ARGUMENT</u>

I. <u>Mr. Qazi Is Entitled To Notice Of The Government's Intent To Rely On FAA-Derived Evidence, Including FAA Material Offered In Support Of Any FISA Application.</u>

The government, after dismissing Mr. Qazi's motion for notice as moot in a two-page filing, DE 75, now asks this Court to reconsider its order granting that motion. But the government has no basis to do so. A motion for reconsideration "should not be used as a vehicle to present authorities available at the time of the first decision." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). Moreover, reconsideration of an order is "an extraordinary remedy to be employed sparingly." *Telamy v. Edwards*, No. 11-62066-CIV, 2013 WL 1624291 (S.D. Fla. Apr. 15, 2013) (quoting *Gathagan v. Rag Shop / Hollywood, Inc.*, No. 04‑80520‑CIV, 2005 WL 6504749, at *1 (S.D. Fla. May 9, 2005)).

Mr. Qazi's reply did not seek any "additional relief," as the government contends. DE 80 at 2. Rather, it simply specified one kind of notice required by the statute— *i.e.*, notice that includes any intent to use evidence obtained *or derived* from FAA surveillance. Mr. Qazi sought notice of this information in his initial motion. *See* DE 67 at 1, 2, 4, 5 (seeking notice of the government's intent to use information "obtained or derived" from FAA surveillance). As Mr. Qazi made clear in his reply, if the government relied on FAA-derived information in its application for a traditional FISA order, he is entitled to notice of the underlying FAA surveillance. This scenario is but one way in which the government may intend to rely on FAA-derived evidence— but it is a very likely one.[1] Thus, Mr. Qazi asked the government to provide

---

[1] In particular, if the government captured communications made by Mr. Qazi in the course of warrantless FAA surveillance, it is likely that it would have expanded its investigation into his activities by, among other things, seeking a targeted FISA order authorizing the interception of

notice of "[w]hether the affidavit and other evidence offered in support of any FISA order relied on information obtained under or derived from an FAA surveillance order." DE 76 at 2. This request identified one specific type of FAA-derived evidence in light of the government's argument that Mr. Qazi's request for notice was moot. But as the government's motion for reconsideration now makes apparent, that request was not moot at all. It raises a crucial question about the government's reliance on FAA surveillance in this case— a question made all the more pressing by Senator Feinstein's congressional testimony suggesting that Mr. Qazi and his brother were in fact the subjects of FAA surveillance.[2] Mr. Qazi is entitled to notice and an answer to this question.

The second prong of the Court's Order correctly requires the government to give such notice, in the form of a simple "yes" or "no" answer, by stating whether any FISA order obtained in this case was predicated upon FAA surveillance. DE 77 at 1. The government's response is perplexing:  it acknowledges its statutory obligation to give specific notice of FAA surveillance, *see* DE 80 at 3, but it then proceeds to entirely ignore the plain meaning of the word "derived." As the government concedes, "Section 1806 of FISA is procedural, and Section 1881e(a) incorporates those procedural rules for application in the event that information obtained *or derived* from FAA electronic surveillance were to be introduced into evidence or otherwise used by the Government in a proceeding." *Id*. (emphasis added). This position is consistent with both the text of the statute and the Supreme Court's decision in *Amnesty*, which stated: "[I]f the Government intends to use or disclose information obtained or derived from a §1881a acquisition in judicial or administrative proceedings, it must provide advance notice of its intent,

---

an even wider swathe of Mr. Qazi's communications. In this way, initial FAA surveillance by the government may have prompted more targeted surveillance of Mr. Qazi using traditional FISA.

[2] *See* Testimony of Senator Diane Feinstein in support of the FISA Amendments Reauthorization Act of 2012, 145 Cong. Rec. S8393 (daily ed. Dec. 27, 2012), reprinted in DE 67 at pages 3-4.

and the affected person may challenge the lawfulness of the acquisition." 133 S. Ct. at 1154. That would seem to be the end of the matter, as this Court recognized in its Order (DE 77). But, instead, the government asks the Court to reverse course, and to free it from providing notice of one of the most obvious types of FAA-derived evidence.

As explained above, if the government relied on FAA surveillance in support of any FISA application in this case, then the resulting FISA evidence is "derived" from FAA surveillance. Accordingly, such reliance would trigger the notice provisions of 50 U.S.C. § 1881e(a) and 50 U.S.C. § 1806(c). Yet the government seeks to avoid this obligation. Indeed, the government seeks to avoid giving notice of one of the most important ways it may have relied on FAA-derived information in its investigation of Mr. Qazi. Although the government disclaims any effort to "rebrand" or "relabel" FAA-derived evidence as FISA evidence, *see* DE 80 at 3, that would be precisely the result if the government prevailed in its motion. Without notice of the kind ordered by the Court, the government could use FAA material to obtain a traditional FISA order and then, at trial, rely solely on its FISA-obtained evidence while remaining silent about its initial FAA surveillance. A defendant would never know, and would never have the opportunity to challenge, the original search. The government would be able, in essence, to transform its FAA surveillance into FISA evidence— reaping the fruit of that FAA surveillance while sidestepping any challenge to the warrantless wiretapping program. The fact that the statutory notice requirement encompasses FAA-*derived* evidence is thus essential. As set forth in the prior briefing, the absence of notice in these circumstances would violate the Fourth and Fifth Amendments, because it would deprive Mr. Qazi of an opportunity to effectively challenge the government's electronic interception of his communications. *See* DE 76 at 10-12.

Whether the government relied on FAA surveillance when it obtained its FISA orders is thus a key part of providing adequate notice. The Court's Order requires nothing more of the government than a "yes" or "no" answer to this question.

## II.   Mr. Qazi's Request For Notice Does Not Implicate The Procedures Set Forth In 18 U.S.C. § 1806(f).

In its effort to avoid answering this question, the government mischaracterizes Mr. Qazi's motion as an attempt to obtain discovery and an "end run" around the procedures contained in 18 U.S.C. § 1806(f). DE 80 at 3-6. But Mr. Qazi's motion for notice does not ask the government to turn over any FISA application, affidavit, or other evidence that might trigger those procedures. That is indeed the province of a separate motion for discovery currently before the Court. *See* DE 45. The motion for notice seeks something quite different, and far more limited: namely, the *legal basis* for the government's interception of Mr. Qazi's electronic communications. The answer to that question is not classified and is directly controlled by the statutory notice provision. 50 U.S.C. § 1806(c). Requiring the government to state, in general, whether it relied on the FAA to obtain its FISA orders is not the same as asking it to disclose the *content* of its FISA applications. The first is part and parcel of providing adequate notice, as required by subsection 1806(c). And it is precisely what the Supreme Court meant when it declared in *Amnesty*, "[I]f the Government intends to use or disclose information obtained or *derived* from a §1881a acquisition in judicial or administrative proceedings, it must provide advance notice of its intent, and the affected person may challenge the lawfulness of the acquisition." 133 S. Ct. at 1154 (citing 50 U.S.C. §§ 1806(c), 1806(e), 1881e(a)) (emphasis added). Nothing in this decision or the statute allows the government to give secret, *ex parte* notice to the Court while

withholding it from the defendant. Indeed, without proper notice, a defendant could not effectively invoke the suppression rights set out in subsections 1806(e) and (g)— because he would never know of the underlying FAA surveillance. In this way, Mr. Qazi's motion for notice simply asks the government for its legal authority: *i.e.*, whether it relied on the FAA, at any stage, in obtaining the evidence it intends to use against Mr. Qazi. The government's answer to this question can and should be little more than one word.

By contrast, the procedures in subsection 1806(f) are triggered *after* notice has been given, when a defendant seeks to obtain FISC orders or applications themselves, or the evidence obtained from such an order. *See* 50 U.S.C. 1806(f). These procedures regulate the way in which a motion to suppress brought under subsection 1806(e) is litigated; they do not affect a defendant's initial right to notice under 50 U.S.C. § 1806(c). It is crucial to distinguish between the notice and discovery provisions in this statutory scheme. Subsection 1806(c) provides:

> **Notification by United States**
>
> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, *notify the aggrieved person and the court* or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information (emphasis added).

This provision directs the government to "notify the aggrieved person *and* the court" of its intent to use "any information obtained or derived from an electronic surveillance of that aggrieved person." *Id.* (emphasis added). The notice requirement does not admit any exceptions, nor does it

make any reference to the *ex parte* and *in camera* procedures that control discovery of surveillance materials under subsection 1806(f).

Nonetheless, the government's interest in confusing these two issues is obvious. If it can avoid giving proper notice to defendants, as it seeks to do here, the government can avoid a challenge to the FAA altogether. In the nearly five years since the FAA was enacted, the government has not once, to undersigned counsel's knowledge, disclosed its reliance on material obtained through FAA surveillance.  It would undoubtedly prefer to maintain that record, which has rendered the government's warrantless wiretapping program all but unreviewable in the interim.

But the Supreme Court's recent decision in *Amnesty* made clear that criminal defendants are entitled to effective notice of FAA-derived evidence in precisely these circumstances. 133 S. Ct. at 1154. Indeed, the government itself told the Supreme Court that such notice was required by statute— whether its evidence was obtained directly from FAA surveillance or simply "derived" from that surveillance. Br. for Petitioner at 8, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). Having prevailed before the Supreme Court, the government cannot now disavow this position in Mr. Qazi's case. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (applying the doctrine of judicial estoppel to prevent a party from reversing its position before successive courts).

Judge Scola's one-page ruling in *United States v. Khan*, No. 11-20331-Cr-Scola (Mar. 14, 2012) (DE 285), does not preclude the type of notice ordered by this Court. The motion in *Khan* was decided before the Supreme Court spoke directly on this issue and clarified the FAA's notice requirement in *Amnesty*. Moreover, as explained above, Mr. Qazi's motion does not ask the government to disclose classified information contained in materials on file with the FISC. It

asks the government to state the legal basis for its electronic surveillance of Mr. Qazi, given direct congressional testimony suggesting that this surveillance was conducted, at least in part, pursuant to the FAA. 145 Cong. Rec. S8393 (daily ed. Dec. 27, 2012) (statement of Sen. Feinstein, naming Mr. Qazi and his brother). This fact alone sets Mr. Qazi's case apart from *Khan*, and provides an additional reason for the Court to compel the government to provide a straightforward response to Mr. Qazi's motion.  Put simply, Mr. Qazi is entitled to notice if the government intends to rely on the fruit of FAA surveillance— even if it supplied the basis for a subsequent FISA order. The government cannot avoid its notice obligation simply by obscuring its FAA surveillance behind a successful FISA application.

## CONCLUSION

For the foregoing reasons, as well as those contained in Mr. Qazi's motion and reply brief, DE 67 and 76, Mr. Qazi maintains that there is no basis to hold the Court's Order (DE 77) in abeyance, or to strike its directive requiring the government to provide notice of FAA surveillance. Mr. Qazi therefore respectfully requests that this Court deny the government's motion for reconsideration of that order (DE 80).

Respectfully submitted,

/s Ronald S. Chapman
Ronald S. Chapman (Bar No. 898139)
ronchapman@bellsouth.net
400 Clematis Street, Suite 206
West Palm Beach, FL 33401
Tel (561) 832-4348
Fax (561) 832-4346
Attorney for Sheheryar Qazi

<u>**Certificate of Service**</u>

Undersigned counsel certifies that on May 14, 2013 he electronically filed this motion with the Clerk of Court using CM/ECF.

<u>/s Ronald S. Chapman</u>
Ronald S. Chapman